UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
SHLD, LLC, DAVID MONTEAU,
HARVEY NEWMAN, STUART
SALLES, and LAURENCE WILNEFF,

                    Plaintiffs,

          - against -

NICHOLAS HALL, AMAR SHAH, TIER
HALL LTD., TIER HALL CONSULTING,
LTD., INDEPENDENT SERVICES GROUP,
LTD., INDEPENDENT BROKING
SOLUTIONS, LTD., THE IVY GROUP,
LTD., MINORIES LAW LIMITED, JEREMY
BLOOMER, and NIGEL FRUDD,

                    Defendants.
- - - - - - - - - - - - - - - - - - -X

15 Civ. 6225 (LLS)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/17/16

     Defendants Tier Hall, Ltd., Independent Services Group,
Ltd., and Independent Broking Solutions, Ltd. (together, "ISG
Defendants," each a United Kingdom limited company) move to
dismiss the Second Amended Complaint because of insufficient
service of the summons and original complaint under the Hague
Convention, lack of personal jurisdiction, and failure to state
a claim upon which relief can be granted. See Fed R. Civ. P.
12(b).

     The motion is denied in part and granted in part.

## BACKGROUND

     As alleged in the Second Amended Complaint (Dkt. No. 63):

-1-

**The ALIANT Funding Project**

Individual plaintiffs David Monteau (an Illinois citizen), Harvey Newman (a New York citizen), Stuart Salles (a New York citizen), and Laurence Wilneff (an Illinois citizen), comprising the members of plaintiff SHLD, LLC (from its members' citizenship, a New York and Illinois limited liability company), contracted with defendants to create an investment vehicle to fund guaranteed life insurance benefits for various members of New York unions and trade associations. Id. ¶ 2, 184.  The project was known as the Amalgamated Life Insurance and Annuity Network Trust of New York ("ALIANT").  Id. ¶ 180.

Monteau, Newman, and Wilneff met with defendant Nicholas Hall on January 31, 2013, and all four individual plaintiffs met with Mr. Hall in New York on July 22, 2013 as part of exploratory efforts to establish funding for ALIANT.  Id. ¶ 183-84.  As a result of the July 22 meeting, on July 29 defendant Amar Shah or Mr. Hall sent the plaintiffs a draft proposal for the project (Id. ¶ 187, Exh. 1), on defendant Tier Hall, Ltd.'s letterhead, identifying it as "An Appointed Representative of Independent Broking Solutions Ltd." Id. Exh. 1.  The draft proposal named Tier Hall, Ltd. as the project manager that would create and structure the investment vehicle and hire legal and accounting firms to serve as professional advisors.  Id.  It stated that Tier Hall, Ltd. would hire Minories Law Limited and

-2-

DFW LLC to provide legal work, Crowe Horwath for accounting work, and Trilithon Capital to arrange the vehicle's funding. Id. ¶ 189.  According to the draft proposal, ALIANT would provide the upfront fee to Tier Hall, Ltd. and its professional advisors as follows:  Crowe Horwath, Trilithon Capital, and Tier Hall, Ltd., $50,000 each; DWF and defendant Minories $100,000 jointly; and hold $50,000 as "contingency," for a total of $300,000.  Id. ¶ 191.

Plaintiffs met in New York with Mr. Shah on September 30, 2013, and thereafter disussed with him furthering the funding project formation.  Id. ¶ 192.  The plaintiffs then executed non-disclosure agreements with defendants Tier Hall, Ltd. and Independent Broking Solutions, Ltd.  Id. ¶ 193.  At that point, plaintiffs founded lead plaintiff SHLD, LLC as "a vehicle to develop and fund the administrative structure and reserves required for ALIANT through the bond backed by life settlements to be created and sold by defendants."  Id. ¶ 194.  On October 11, 2013, Mr. Shah obtained an additional $30,000 beyond the initial $300,000 fee, claiming it was needed to form an Irish bond company to hold the portfolio.  Id. ¶ 195.

Mr. Shah emailed the plaintiffs a Heads of Terms draft agreement on October 16, 2013, copying Mr. Hall.  Id. ¶ 196. The Heads of Terms agreement detailed the services required by the contract.  Mr. Shah emailed the plaintiffs using Independent

-3-

Services Group. Ltd.'s domain. Id. This draft listed the project managers not as Tier Hall, Ltd., but as Tier Hall Consulting, Ltd. Id. Exh. 2.[1] Plaintiffs edited and returned the draft to Mr. Shah, and he and Mr. Hall executed the document and sent it back to the plaintiffs. Id. ¶ 197-98. On or about October 30, the plaintiffs executed and returned the agreement. Id. ¶ 199. The agreement stated that Tier Hall Consulting, Ltd. would establish an Irish bond company and hire the professional advisors. Id. Exh. 2. Tier Hall Consulting, Ltd. and SHLD, LLC then signed the contract, which incorporated the Heads of Terms agreement. Id. ¶ 202. The contract describes SHLD, LLC as the client and Tier Hall Consulting, Ltd. as the consultant. Id. Exh. 3 at 1. Schedule 1 of that agreement lists Mr. Shah and Mr. Hall as the consultant's staff and the fees as $330,000. Id. at 8.

Within three to six months of the payment of the $330,000 commitment fee, Tier Hall Consulting, Ltd. was to establish the Irish bond company and hire its board and management team. Sec. Am. Compl. ¶ 207. Tier Hall Consulting, Ltd. would manage the project as a whole, including the work done by its legal and accounting professional advisors, and assume responsibility for any liability for their failure to perform. Id. ¶¶ 204, 209.

---

[1] The Heads of Terms agreement and the contract refer to Tier Hall Consulting, Ltd. as "Tier Hall Consultancy."

-4-

Within three to six months of the contract's execution, Tier
Hall Consulting, Ltd. together with the professional advisors
would engage with potential investors and provide plaintiffs
with a business plan.  Id. ¶ 211.  The contract provided that
"The laws in force in the United States of America apply to this
Contract."  Id.  ¶ 212.

Having executed the funding agreement, plaintiffs wired
$33,000 to Tier Hall Consulting, Ltd. on November 6, and another
$297,000 on November 14.  Id. ¶ 213.  On November 15, Mr. Hall
emailed Monteau concerning the agreement using Independent
Service Group, Ltd.'s email server and signature block.  Id. ¶
214.  Noting that the plaintiffs had dealt with a number of
different entities,[2] Mr. Monteau emailed Mr. Shah that same day
requesting clarification on which company was performing the
ALIANT funding project management.  Id. ¶ 215.  Mr. Shah
confirmed to the plaintiffs that they were contracting with Tier
Hall Consulting, Ltd.  Id. ¶ 216.

---

[2] The plaintiffs engaged with the following entities during the ALIANT funding
project negotiation process:  Tier Hall, Ltd., on whose letterhead the draft
proposal was listed and with whom the plaintiffs executed a non-disclosure
agreement; Independent Broking Solutions, Ltd., listed on the letterhead of
the draft proposal and with whom plaintiffs executed a non-disclosure
agreement; Independent Services Group, Ltd., whose email server Mr. Shah and
Mr. Hall used to communicate with the plaintiffs regarding the ALIANT project
and the parent of subsidiary Independent Broking Solutions, Ltd.; and Tier
Hall Consulting, Ltd., the project manager on the final Heads of Terms
agreement and executed contract and listed on the bank transmittal
information.

On November 26, Mr. Shah emailed Mr. Monteau from the Independent Services Group, Ltd. domain, copying Mr. Hall, reporting that they had secured letters of engagement from professional advisors Baker Hostetler, Nigel Frudd at Minories Law Limited, and Jeremy Bloomer at The Ivy Group, Ltd. Id. ¶ 217.

## **Defendants' Performance**

On February 18, 2014 Tier Hall Consulting, Ltd. provided a draft "Teaser" outlining the bond structure for prospective investors, in a form that was not specifically tailored to the ALIANT funding project. Id. ¶ 218. The same day, Mr. Shah informed the plaintiffs that Tier Hall Consulting, Ltd. was a month behind on the funding project. Id. On February 23, plaintiffs communicated dissatisfaction with the absence of monthly reports, insufficient work product on the "Teaser," and overall absence of progress. Id. ¶ 219. Over the next few months, Mr. Hall and Mr. Shah continued to provide progress statements but continued to delay deadlines, and failed to show any work or actual progress on the ALIANT funding project. Id. ¶¶ 221-39.

By December 2014, the defendants had yet to find any investor to fund ALIANT. Id. ¶ 239.

On January 7, 2015, plaintiffs wrote to Mr. Hall requesting a list of itemized expenditures incurred on behalf of the ALIANT

-6-

project, documentation of work performed, and the status of the

contingency fund.  Id. ¶ 242.  Mr. Hall responded on January 14,

detailing the following $330,000 of expenditures:  Minories Law

Limited, $40,000; The Ivy Group, $85,000; Independent Services

Group, Ltd., $65,000; Tier Hall Consulting, Ltd., $120,000; and

general expenses, $20,000.  Id. ¶ 243.  Mr. Hall provided no

documentation or support for the expenditures, nor any schedules

supporting the payments.  Id.  He represented the project was

ongoing and that resources had been expended for securing

potential investors.  Id. ¶ 244.

Plaintiffs, having received no evidence of progress on the

ALIANT funding contract, wrote to defendants on March 11

terminating the contract and demanding return of the $330,000

paid to defendants.  Id. ¶ 249.  The defendants refused to

refund the payments.  This litigation followed.

## DISCUSSION

### Service of Process

Plaintiffs served the ISG Defendants by having the Clerk of

Court mail the summons and original complaint via registered

mail with return receipt request to the ISG Defendants' London,

United Kingdom business address, where it was received by a

security guard.[3]  ISG Defendants' Memorandum of Law ("ISG

---

[3] Plaintiffs, after serving the summons and original complaint pursuant to
Fed. R. Civ. P. 4, twice amended their complaint in order to cure
jurisdictional defects and to plead properly the citizenship of one of the

-7-

Defendants' brief") (Dkt. No. 69) at 7.  The ISG Defendants
contend that delivery of the summons and complaint upon "a
person unauthorized to accept service" on their behalf and
failure to provide the signed return receipt renders the service
"fatally deficient."  Id. at 6.

Since the plaintiffs served the summons and complaint on
the ISG Defendants in the United Kingdom, the Hague Convention
applies.  See G.A. Modefine, S.A. v. Burlington Coat Factory
Warehouse Corp., 164 F.R.D. 24, 25 (S.D.N.Y. 1995); Fed R. Civ.
P. 4(f)(1) (authorizing international service under Hague
Convention).  Article 10(a) of the Hague Convention authorizes
service on foreign litigants in signatory nations to be
effectuated by mail.[4]  Brockmeyer v. May, 383 F.3d 798, 804 (2d.
Cir 2004).  "The U.K., a signatory to the Hague Convention, does
not object to Article 10(a); U.S. Courts have construed this to
mean that service of process by international mail is valid."
Wilson v. Austin, No. 11 Civ. 4594 (SJF)(GRB), 2012 WL 3764512,
at *5 (E.D.N.Y. June 25, 2012) report and recommendation
adopted, No. 11 Civ. 4594 (SJF)(GRB), 2012 WL 3764509 (E.D.N.Y.
Aug. 27, 2012).

---

defendants.  Those amended complaints did not assert any new claims and were
served on defendants' attorneys in accordance with Rule 5(b).  Accordingly,
the sufficiency of service is assessed based on the Rule 4 service of the
summons and original complaint.

[4] Both the United States and the United Kingdom are Hague Convention
signatories.

-8-

Since it is evident to the court (and the parties) "that the summons and complaint were delivered to the addressee" (Fed. R. Civ. P. 4(*l*)(2)(B)), the fact that their initial receipt was by a security guard is inconsequential.  Service was effective and sufficient.

Accordingly, the motion to quash service, or dismiss the complaint, for improper service is denied.

### Personal Jurisdiction

The ISG Defendants next move to dismiss the Second Amended Complaint for lack of personal jurisdiction.  Since Erie v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938), the law of the state in which the court sits applies to a diversity action.  Ash v. Richards, 572 F. App'x 52, 53 (2d Cir. 2014) (citing Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d. Cir. 2001)) ("Because this is a diversity action, we resolve the question of personal jurisdiction with reference to New York law, the forum in which the district court sits.").

> The Court must follow a two-step procedure to determine whether personal jurisdiction exists. First, the Court must decide whether a statutory basis for personal jurisdiction exists under the New York Civil Practice Law and Rules (the "C.P.L.R.").  Second, if a statutory basis does exist, the Court must conduct a constitutional inquiry to determine whether the exercise of personal jurisdiction is consistent with the requirements of due process.

J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 547 (S.D.N.Y. 2001), following Int'l Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154 (1945).

## Applicable Law

New York C.P.L.R. 302 allows the court to exercise personal jurisdiction over a party, who, although not continuously and systematically present in New York, "in person or through an agent: . . . transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ."  (N.Y. C.P.L.R. 302(a)(1)) if the suit arises from those transactions or contracts.

> CPLR 302(a)(1), the provision in issue on this appeal, authorizes the court to exercise jurisdiction over nondomiciliaries for tort and contract claims arising from a defendant's transaction of business in this State.  It is a "single act statute" and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.

Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988) (citing cases).  "The central inquiry relates to the 'quality' of a defendant's contacts with New York--i.e., whether the contacts indicate an intent to invoke the benefits and privileges of New York law."  Peterson v. Islamic Republic of Iran, No. 10 Civ. 4518 (KBF), 2013 WL 1155576, at *12 (S.D.N.Y. Mar. 13, 2013), aff'd, 758 F.3d 185 (2d Cir. 2014) (citing Licci

-10-

ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61

(2d Cir. 2012)).  The inquiry is fact-based, viewed in the

totality of the circumstances.  Id.

    A defendant can be subjected to personal jurisdiction by

its own actions or those of its agents.  See, e.g., Owens v.

Freeman, 65 A.D.3d 731, 884 N.Y.S.2d 791 (3d Dep't 2009).  "To

establish an agency relationship for purposes of personal

jurisdiction, a plaintiff must show that the alleged agent acts

for the benefit of, and with the knowledge and consent of, the

non-resident principal, and over which that principal exercises

some control."  Bidonthecity.com LLC v. Halverston Holdings

Ltd., No. 12 Civ. 9258 (ALC), 2014 U.S. Dist. LEXIS 45891, at

*10 (S.D.N.Y. Mar. 31, 2014) (quotations omitted).  The

relationship need not be a formal one.

> Plaintiff need not establish a formal agency
> relationship between defendants and McFadden Company.
> He need only convince the court that McFadden Company
> engaged in purposeful activities in this State in
> relation to his transaction for the benefit of and
> with the knowledge and consent of the Texas defendants
> and that they exercised some control over McFadden
> Company in the matter.

Kreutter, 71 N.Y.2d at 467.

    "So long as a party avails itself of the benefits of the

forum, has sufficient minimum contacts with it, and should

reasonably expect to defend its actions there, due process is

not offended if that party is subjected to jurisdiction even if

-11-

not 'present' in that State."   Kreutter, 71 N.Y.2d at 466

(citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222-23, 78

S. Ct. 200-01 (1957); Burger King Corp. v. Rudzewicz, 471 U.S.

462, 105 S. Ct. 2174 (1985); World-Wide Volkswagen Corp. v.

Woodson, 444 U.S. 286, 292, 100 S. Ct. 559, 564-65 (1980); Int'l

Shoe, 326 U.S. 310, 66 S. Ct. 154).

### Application To This Case

### Mr. Hall, Mr. Shah, and Tier Hall Consulting, Ltd.

Mr. Hall and Mr. Shah transacted business in New York as

agents of the corporate ISG Defendants such that exercise of

personal jurisdiction over the ISG Defendants pursuant to

C.P.L.R. 302(a)(1) is proper.   Mr. Hall met twice, on January

31, 2013 and July 22, 2013, with the defendants to discuss

funding for ALIANT.   Sec. Am. Compl. ¶¶ 183-84.   At least the

second of these two meetings took place in New York.   Id. ¶ 184.

Mr. Shah also met with the plaintiffs in New York on September

30.   Id. ¶ 192.   Discussion of funding requirements and project

timelines in these meetings "substantially advanced or were

essential to the ultimate formation" of the agreement between

SHLD, LLC and defendants Hall and Shah and their principals.

Id. ¶ 192.   See Traffix, Inc. v. Herold, 269 F. Supp. 2d 223,

226-27 (S.D.N.Y. 2003) (finding personal jurisdiction over non-

domiciliary who traveled to New York for preliminary discussions

and meetings and engaged in ongoing telephonic and email

communications); ICC Primex Plastics Corp. v. LA/ES Laminati
Estrusi Termoplastici S.P.A., 775 F. Supp. 650, 655 (S.D.N.Y.
1991) ("Contract negotiations in New York will satisfy that
standard if the discussions 'substantially advanced' or were
'essential to' the formation of the contract or advanced the
business relationship to a more solid level.").

There is no doubt defendants Mr. Shah and Mr. Hall are
agents of Tier Hall Consulting, Ltd.  They are listed as
employees of Tier Hall Consulting, Ltd. on the contract between
Tier Hall Consulting, Ltd. and SHLD, LLC.  Both signed the
contract on behalf of Tier Hall Consulting, Ltd.  Further, they
negotiated the terms of the ALIANT funding project with the
plaintiffs, were their primary contact points throughout the
project negotiation and purported execution phase, and hired the
professional advisors who were contracted to perform legal and
accounting advisory services to the ALIANT funding project.
Their activities render the ISG Defendants subject to
jurisdiction in New York

### The ISG Defendants

#### 1.    Tier Hall, Ltd.

Defendants Mr. Hall and Mr. Shah own and direct Tier Hall,
Ltd., and they negotiated the ALIANT funding project with the
plaintiffs using that entity before ultimately signing the
contract with the entity Tier Hall Consulting, Ltd.  Mr. Hall

-13-

and Mr. Shah also executed a non-disclosure agreement between
the plaintiffs and Tier Hall, Ltd.  Those preliminary activities
between plaintiffs and Tier Hall, Ltd. substantially advanced,
or were essential to, the formation of the contract.
"Preliminary negotiations conducted in New York qualify as a
transaction of business if they have substantially advanced or
were substantively important or essential to the formation of a
contract outside New York." Ainbinder v. Potter, 282 F. Supp.
2d 180, 187 (S.D.N.Y. 2003) (quotations omitted).

     Plaintiffs have also sufficiently pled that Tier Hall, Ltd.
is an alter ego of Tier Hall Consulting, Ltd. for jurisdictional
purposes.  "Establishing the exercise of personal jurisdiction
over an alleged alter ego requires application of a less
stringent standard than that necessary to pierce the corporate
veil for purposes of liability." Storm LLC v. Telenor Mobile
Commc'ns AS, No. 06 Civ. 13157 (GEL), 2006 WL 3735657, at *13 n.
8 (S.D.N.Y. Dec. 15, 2006) (citing Marine Midland Bank, N.A. v.
Miller, 664 F.2d 899, 904 (2d Cir. 1981)).  "In fact, when veil
piercing is only being used to assert jurisdiction, 'the
question is only whether the allegedly controlled entity was a
shell for the allegedly controlling party; it is not necessary
to show also that the shell was used to commit a fraud, which is
normally required to pierce the corporate veil for liability.'"
GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp. 2d

-14-

308, 319 (S.D.N.Y. 2009) (quoting Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., 475 F. Supp. 2d 456, 458 (S.D.N.Y. 2007). Tier Hall, Ltd. and Tier Hall Consulting, Ltd. had common ownership and management and maintained the same website and business address. Mr. Shah and Mr. Hall, owners and directors of both entities, used those entities interchangeably when negotiating the ALIANT transaction.

Therefore, personal jurisdiction over ISG Defendant Tier Hall, Ltd. is proper.

### 2.   Independent Services Group, Ltd.

Mr. Shah used an Independent Services Group, Ltd. email address to circulate a draft copy of the contract and to communicate progress in securing letters of engagement from certain professional advisors. Sec. Am. Compl. ¶ 196, 214, 217. Mr. Hall used defendant Independent Services Group, Ltd.'s signature block in communications with the plaintiffs concerning the SHLD, LLC agreement. Id. ¶ 214.

Further, Independent Services Group, Ltd.'s receipt of $65,000 plaintiffs paid pursuant to the ALIANT contract shows Mr. Hall, Mr. Shah, and Tier Hall Consulting, Ltd. were acting for Independent Service Group, Ltd.'s benefit. Mr. Hall reported to Mr. Salles in a January 14, 2015 email that defendant Independent Services Group, Ltd. had received $65,000

of the start-up money.[5]  Matthew J. Maiorana Decl. (Dkt. No. 82),
Exh 7 at 2.  See GEM Advisors, Inc., 667 F. Supp. 2d at 319
(finding personal jurisdiction via agency where plaintiff
alleged non-resident principal "stood to benefit from [its
agent's] actions and contracts by receiving some or all of the
sale price").

The use of its facilities and its receipt of substantial
funds in the project justify at least tentative exercise of
personal jurisdiction over Independent Services Group, Ltd.

### 3.    Independent Broking Solutions, Ltd.

Mr. Hall and Mr. Shah had the plaintiffs execute a non-
disclosure agreement with Independent Broking Solutions, Ltd.
during the negotiation process.  Independent Broking Solutions,
Ltd. also appeared on the Tier Hall, Ltd.'s letterhead as being
represented by it.

Under the long-arm statute, the claim must also arise from
the defendant's transaction of business.  C.P.L.R. 302(a)(1).
"A claim arises from the defendant's in-state activity if there

---

[5] Though that factual assertion is controverted by Readings's declaration
(Dkt. No. 70), that disputed factual matter in conflicting affidavits is to
be construed in the plaintiffs' favor and not decided at the motion to
dismiss stage. In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673
(2d Cir. 2013) (quoting Seetransport Wiking Trader Schiffarhtsgesellschaft
MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572,
580 (2d Cir. 1993)).  It, and the resulting assertion of jurisdiction over
Independent Services Group, Ltd., remain open as disputed factual issues.

-16-

is a 'substantial nexus between the business and cause of action.'"   Danaher Corp. v. Travelers Indem. Co., No. 10 Civ. 121 (JPO), 2014 WL 7008938, at *3 (S.D.N.Y. Dec. 12, 2014) (quoting Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005)).   The mere execution of a nondisclosure agreement with respect to transactions with which the signer had nothing further to do, and did nothing, does not amount to "transacting business" under C.P.L.R. 302(a)(1).

The motion to dismiss is granted as to Independent Broking Solutions, Ltd.

### Due Process

Exercise of jurisdiction over the other ISG Defendants comports with the due process requirements articulated in International Shoe.   Those defendants, through their agents, purposefully directed their activities at residents of the forum.   Burger King, 471 U.S. at 472, 105 S. Ct. at 2182.   There is no due process violation in finding them subject to personal jurisdiction pursuant to C.P.L.R. 302(a)(1).

The ISG Defendants' motion to dismiss for lack of personal jurisdiction is denied as to Tier Hall, Ltd. and Independent Services Group, Ltd. and is granted as to Independent Broking Solutions, Ltd.

-17-

## Failure to State a Claim

"In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The complaint must merely contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940-41, (2009).

## Contract Claim

The ISG Defendants argue that plaintiffs cannot maintain a breach of contract action against them because they are not parties to the ALIANT funding contract between SHLD, LLC and Tier Hall Consulting, Ltd. See ISG Defendants' brief at 15-16. It is undisputed that the final contract and incorporated Heads of Term agreement list Tier Hall Consulting, Ltd. as the party managing the ALIANT funding project. See Sec. Am. Compl. Exh. 3 at 1. Further, when plaintiffs questioned Mr. Shah regarding which entity was working on the ALIANT funding project, Mr. Hall

-18-

confirmed they were contracting with Tier Hall Consulting, Ltd. Id. ¶ 215.  The ISG Defendants contend that the absence of mention of them in the final contract, coupled with Mr. Hall's confirmation to Mr. Monteau that the contract was with Tier Hall Consulting, Ltd. frees them from liability under it.

Generally, a party who is not a signatory to a contract cannot be held liable for a breach.  See TransformaCon, Inc. v. Vista Equity Partners, Inc., No. 15 Civ. 3371 (SAS), 2015 WL 4461769, at *3 (S.D.N.Y. July 21, 2015).  New York law recognizes an exception to this general rule:  "Where a parent corporation manifests 'intent to be bound' by a contract, the parent can be considered the alter ego of the subsidiary and therefore bound by the contract."  Id. (quoting Horsehead Indus. v. Metallgesellschaft AG, 239 A.D.2d 171, 172, 657 N.Y.S.2d 632, 633 (1st Dep't 1997)).  Additionally, "a non-signatory can be liable for a contract by manifesting an intent to be bound without being an 'alter ego' of a signatory to the contract." MBIA Ins. Corp. v. Royal Bank of Canada, 706 F. Supp. 2d 380, 397 (S.D.N.Y. 2009) (citing RUS, Inc. v. Bay Indus., Inc., No. 01 Civ. 6133 (GEL), 2004 WL 1240578, at *20-21 (S.D.N.Y. May 25, 2004)).  "A non-signatory may also be found liable for breach of contract without being an alter ego if its actions demonstrate privity of contract or that it assumed obligations under the contract."  TransformaCon, Inc., 2015 WL 4461769, at *3.

-19-

Tier Hall, Ltd. can be held liable for nonperformance on the contract because it manifested an intent to be bound. An intent to be bound is inferable from a corporate parent's participation in the negotiation of a contract. See Horsehead Indus., 239 A.D.2d at 171-72, 657 N.Y.S.2d at 633. Tier Hall Ltd., and Tier Hall Consulting, Ltd. share ownership and management, and those common owners used the Tier Hall, Ltd. entity to negotiate the ALIANT funding agreement, and had plaintiffs execute a non-disclosure agreement with it. Here, Tier Hall, Ltd.'s liability can be predicated on its participation in the negotiation of the contract. In addition, Tier Hall, Ltd. took on obligations related to the funding project in the non-disclosure agreement, even if it was not a signatory to the final agreement.

Accordingly, plaintiffs have stated a breach of contract claim against Tier Hall, Ltd.

Independent Services Group's retention of the $65,000 paid under the ALIANT funding contract reflects participation in the project, and under its terms. While it is true that Independent Services Group was not a signatory, "the existence of a contract may be established through conduct of the parties recognizing the contract." Apex Oil Co. v. Vanguard Oil & Serv. Co. Inc., 760 F.2d 417, 422 (2d Cir. 1985); see Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC, No. 11 Civ. 6804

(PAE), 2012 WL 527209, at *4 (S.D.N.Y. Feb. 17, 2012) ("a party which is a non-signatory to a contract, but which nonetheless receives a direct benefit from that contract, is estopped from seeking exclusion from provisions of the contract").

The ISG Defendants' motion to dismiss the breach of contract claim against them is therefore denied with respect to Tier Hall, Ltd. and Independent Services Group, Ltd.

### Tort Claims

The ISG Defendants argue that plaintiffs' tort claims must be dismissed as duplicative of their contract claims, and cite New York's economic loss doctrine, which requires a separate economic harm for a tort claim to proceed along with a contract claim. See ISG Defendants' brief at 13-15.

### Fraud Claim

"The mere allegation that 'a defendant did not intend to perform a contract with a plaintiff when he made it' generally fails to state a claim for fraud, however, and will be dismissed as duplicative under New York law." VTech Holdings Ltd. v. Lucent Techs., Inc., 172 F. Supp. 2d 435, 439 (S.D.N.Y. 2001) (quoting Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (N.Y.A.D. 1988)).  In order to maintain a fraud claim as well as a breach of contract, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent

-21-

misrepresentation collateral or extraneous to the contract; or
(iii) seek special damages that are caused by the
misrepresentation and unrecoverable as contract damages."
Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,
98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted).

　　　The plaintiffs argue that the ISG Defendants' misstatements
fall in the first exception--that the ISG Defendants'
misstatements violate an independent legal duty covered by the
first Bridgestone/Firestone exception.  "Defendants acted with
such wanton dishonesty as to imply a criminal indifference to
civil obligations.  Defendants committed gross, wanton, or
willful fraud or other morally culpable conduct of a high
degree."  Sec. Am. Compl. ¶ 277.  "ISG, IBS and Tier Hall, Ltd.
had obligations not to take unearned money from plaintiffs or to
misrepresent material facts; obligations that exist separate and
apart from any contract."  Plaintiffs' Opp. at 21.  The
misstatements in the Second Amended Complaint concern assurances
of performance under the contract.  The Second Amended Complaint
fails to establish that those statements violate a separate,
independent legal duty.

> However, to sustain a tort action separate from the
> breach of contract claim, the tortious conduct must
> have breached a legal duty existing independently of
> the contractual relations between the parties.  The
> complaint, long as it is, fails to specify the
> independent duty.  Thus, the fraud claim is
> inadequately stated.

-22-

Crabtree v. Tristar Auto. Grp., Inc., 776 F. Supp. 155, 162
(S.D.N.Y. 1991) (citing Hargrave v. Oki Nursery, Inc., 636 F.2d
897, 899 (2d Cir. 1980)).

Absent an independent legal duty, allegedly fraudulent
statements concerning intentions to perform or assurances of
performance under the contract do not state a claim for fraud.
"Furthermore, under New York law, a fraud claim cannot derive
wholly from a defendant's false statement of an intent to
perform under a contract." Shelton v. Sethna, No. 10 Civ. 4128
(TPG), 2012 WL 1022895, at *7 (S.D.N.Y. Mar. 26, 2012) (granting
motion to dismiss a fraud claim as duplicative of a plaintiff's
fraud claim, even where there existed "a bona fide dispute as to
the existence of a valid contract between the parties").
Accordingly, the plaintiffs' fraud claim against the ISG
Defendants is dismissed.

## Conversion Claim

"'Conversion is any unauthorized exercise of dominion or
control over property by one who is not the owner of the
property which interferes with and is in defiance of a superior
possessory right of another in the property.'" Moses v. Martin,
360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (quoting Schwartz v.
Capital Liquidators, Inc., 984 F.2d 53, 53 (2d Cir. 1993).

The conversion claim may proceed at this stage.  Where the defendant disputes contractual liability, a conversion claim can proceed in the alternative:

> As discussed above with respect to Plaintiff's unjust enrichment claim, at this stage of the litigation alternative pleading is permissible under the Federal Rules.  Moreover, the damages Plaintiff seeks for the "non-buyout" goods that are still in Defendant's possession may be separate from the damages Plaintiff can recover in its breach of contract action, as Defendant has denied liability under the contract for damages relating to several of these goods.  See Dkt. No. 39 at 10.  Since these goods allegedly belong to Plaintiff and Plaintiff may not be able to recover them through the breach of contract action, Plaintiff's conversion claim survives Defendant's motion to dismiss.

Coyne Int'l Enterprises Corp. v. Mylan Pharm., Inc., No. 13 Civ. 821 (MAD) (TWD), 2014 WL 2766189, at *4 (N.D.N.Y. June 18, 2014).

Accordingly, the ISG Defendants' motion to dismiss the conversion claim as duplicative of the contract claim is denied with respect to Tier Hall, Ltd. and Independent Services Group, Ltd.

### Professional Negligence and Malpractice

Plaintiffs' third tort claim, for professional negligence and malpractice can only stand if it arises from an independent duty separate to those incurred under the contract.  Regarding professional malpractice, "An independent duty sufficient to support a tort claim alongside breach of contract has been found

-24-

where: (1) the defendant is engaged in an occupation subject to professional malpractice claims, or (2) the nature of the damages sought implicates a larger public interest." MVP Health Plan, Inc. v. OptumInsight, Inc., No. 13 Civ. 1578 (LEK) (CFH), 2014 WL 5475287, at *3 (N.D.N.Y. Oct. 29, 2014) (citing Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 18 (2d Cir. 2000).

Plaintiffs have failed to plead either of those elements. Accordingly, the professional negligence and malpractice claim is dismissed as to the ISG Defendants.

## CONCLUSION

The ISG Defendants' (Tier Hall, Ltd., Independent Broking Solutions, Ltd., and Independent Services Group, Ltd.) Motion to Dismiss the Second Amended Complaint (Dkt. No. 68) is denied with respect to its claims of ineffective service of process, for lack of personal jurisdiction with respect to Tier Hall, Ltd. and Independent Services Group, Ltd., and failure to state claims of breach of contract (Count One) and conversion (Count Two) against Tier Hall, Ltd. and Independent Services Group, Ltd.  The motion is granted with respect to its claims of lack of personal jurisdiction over Independent Broking Solutions, Ltd. and failure to state claims of fraud and deceit (Count Three) and professional negligence and malpractice (Count Four) against the remaining ISG Defendants.

-25-

So ordered.

Dated:  New York, New York
        February 17, 2016

_____
LOUIS L. STANTON
U.S.D.J.